**BURTON v. COMMONWEALTH.**

Court of Appeals of Kentucky.

June 25, 1954.

Tom P. Senff, Mt. Sterling, Harvey T. Lisle, Winchester, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., R. R. Craft, J. Smith Hayes, Winchester, for appellee.

SIMS, Chief Justice.

Appellant, Gene Burton, was convicted of forcibly raping Helen Cline, a 15 year old girl, against her will. His punishment was fixed at confinement in the penitentiary

for 10 years. He assigns only one ground for reversal; the verdict is flagrantly against the evidence. This necessitates a review of the evidence. However, in so doing we will not go into details but it will suffice to give the substance of the evidence.

The prosecutrix, Helen Cline, testified that she met appellant about 8:30 o'clock on the night of January 28, 1953, through two of her friends, Mort Hiler and Jane Barker, at an entertainment at the Camargo School. Appellant, a middle aged man, was not introduced to her under his true name of Gene Burton, but under the alias of Jimmy Jones. These four left in appellant's car and drove to a remote section on the Quisenberry road where the car was stopped between two large posts off the highway.

Hiler and Jane testified they left appellant and Helen on the front seat of the car and went some 200 yards from the vehicle. Presently, they heard Helen scream and returned to the car, but appellant told them to go away. Helen testified she slapped appellant and struggled with him but he succeeded in ravishing her on the front seat of the car with both doors closed and the windows up. Mrs. Clarence Wagner, who lived near the place where the crime was alleged to have occurred, testified she heard a woman scream as if in distress on the night and about the time Helen testified she was raped.

There is some conflict in the evidence as to the time Helen got home that night. Her parents were divorced and Helen and her 19 year old sister lived with an aunt, Mrs. Ora Crace. Upon arriving home that night, Helen was crying and said a man had tried to take advantage of her but she told neither her aunt nor her sister that she had been raped. There is no testimony as to whether Helen was bleeding when she got home but she was bleeding profusely the next day and Dr. Frank Sewell was called. She was taken to the hospital and he took a stitch in her vagina to stop the bleeding. Dr. Sewell testified Helen had been penetrated.

The defense is an alibi. Appellant testified he was not with Helen on the night of the alleged crime, nor was he with Hiler or Jane that night. He drove alone in his car from his home about 7:45 P.M., to a friend's house on the Johnson Station Pike and not finding his friend there, he drove to Mt. Sterling, purchased some beer, then drove to Frenchburg and returned to his home shortly after 11 o'clock. He was corroborated by his wife as to the time he got home but nobody corroborated him otherwise.

Appellant insists that it was impossible for him to have raped prosecutrix on the front seat of his car, especially with both doors and windows closed. He further insists that if prosecutrix was bleeding profusely the next day, there would have been blood on the seat of his car. The testimony shows no blood was on the seat of the car. Dr. Sewell testified that from seeing prosecutrix bleeding profusely the day following the alleged crime, she would have bled on the car seat. The testimony of the Commonwealth shows that Helen drove around with appellant and the other couple in appellant's car for a couple of hours or more after the alleged rape and had several opportunities to escape from the car and report the occurrence, which she did not do.

Appellant leans heavily upon Weinel v. Com., 302 Ky. 742, 196 S.W.2d 375, and other cognate cases to the effect that where the prosecuting witness relates circumstances, which in the light of human experience preclude the possibility or probability of the crime having been committed, this court will not hesitate to reverse a judgment of conviction. But the facts in the case at bar distinguish it from the Weinel and other cases relied upon by appellant. True, it might be difficult for a man to perpetrate this crime on the front seat of an automobile with the doors and windows closed, yet it cannot be said it is impossible for him to so do. The record is silent as to the time prosecutrix began bleeding profusely and it cannot be said from the record before us that a flow of blood was coming from her vagina on the night of the crime. Nor does the fact that prosecutrix did not

escape from the car in Mt. Sterling, when it was parked near the police station, and report the crime disprove that appellant raped her.

Much is made by appellant of the fact that prosecutrix could not describe how he was dressed on the night of the alleged crime—whether or not he had on a tie, a leather jacket or an overcoat. Certainly the fact this girl is unable to describe the clothing of an assailant with whom she rode around in a car several hours at night does not refute her testimony that he raped her, especially when her screams were heard by her two companions who positively identified appellant as the man in the car with the prosecutrix.

Under the contradictory evidence shown by the record, this is clearly a case for the jury. We have held in cases of this character that a conviction may be had upon the uncorroborated evidence of prosecutrix unless her testimony is so highly improbable as to indicate it is false. Fugate v. Com., 291 Ky. 793, 165 S.W.2d 573; Hogue v. Com., 305 Ky. 298, 203 S.W.2d 42; McDaniel v. Com., 308 Ky. 132, 213 S.W.2d 1007; Adams v. Com., Ky., 261 S.W.2d 811. It cannot be said that Helen's testimony was improbable.

The judgment is affirmed.